IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| North American Specialty Insurance Company, | ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 6:12-3562-HMH |
| vs. | ) ) ) | **OPINION & ORDER** |
| Able Constructors, Inc., Herschel L. Morningstar and Verna Morningstar, | ) ) ) ) | |
| Defendants. | ) | |

This matter is before the court on Plaintiff North American Specialty Insurance Company's ("NAS") motion for summary judgment on its claims asserted against Able Constructors, Inc. ("Able"), Herschel L. Morningstar, and Verna Morningstar (collectively "Defendants"). After review, the court grants in part and denies in part NAS's motion.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

The following facts are undisputed. On August 19, 2009, Defendants executed a general indemnity agreement ("GIA") for the benefit of NAS. (Compl. ¶ 9, ECF No. 1); (Pl. Mot. Summ. J. Ex. A (Defs. Resp. Pl. Req. Admiss. ¶ 1), ECF No. 30-1.) Defendants executed the

---

[1] Pursuant to Local Rule of Civil Procedure 7.08, the district court may determine motions without a hearing.

GIA to induce NAS to issue payment and performance bonds as surety on behalf of Able. The bonds named Able as principal in connection with certain construction projects.[2] (Compl. ¶¶ 9, 12, ECF No. 1); (Pl. Mot. Summ. J. Ex. A (Defs. Resp. Pl. Req. Admiss. ¶ 5), ECF No. 30-1.) Under the GIA, Defendants jointly and severally agreed to

> . . . exonerate, hold harmless, and indemnify [NAS] from and against any and all liability, loss, costs, damages, fees of attorneys and consultants, and other expenses, including interest, which [NAS] may sustain or incur by reason of, or in consequence of, the execution of such bonds and any renewal, continuation or successor thereof, including but not limited to, sums paid or liabilities incurred in settlement of, and expenses paid or incurred in connection with claims, suits or judgments under such bonds, expenses paid or incurred in enforcing the terms hereof, in procuring or attempting to procure a release from liability, or in recovering or attempting to recover losses or expenses paid or incurred, as aforesaid.

(Pl. Mot. Summ. J. Ex. B (GIA ¶ 2), ECF No. 30-2 & Ex. A (Defs. Resp. Pls. Req. Admiss. ¶ 3), ECF No. 30-1.) Pursuant to the GIA, Defendants also jointly and severally agreed:

> If [NAS] receives any claim or lawsuit asserting liability, or sets up a reserve to cover any liability, claim asserted, suit or judgment under any such bond, the Indemnitors will, immediately upon demand, and whether or not [NAS] shall have made any payment therefor, deposit with [NAS] a sum of money equal to such claim or reserve and any increase thereof as collateral security on such bond, and such sum and any other money or property which shall have been or shall hereafter be pledged as collateral security on any such bond, shall be available, in the discretion of [NAS], as collateral security on all bonds coming within the scope of this instrument, or for any other indebtedness of the Indemnitors to [NAS]; and any such collateral security shall be held subject to the terms of [NAS's] regular form of receipt for collateral, which is by reference made a part hereof.

(Id. Ex. B (GIA ¶ 3), ECF No. 30-2 & Ex. A (Defs. Resp. Pl. Req. Admiss. ¶ 4), ECF No. 30-1.)

Defendants also agreed that

---

[2] Four payment and performance bonds were issued by NAS on behalf of Able: Bond Nos. 2094504, 2133291, 2138519, and 2133266. (Compl. Ex. 2 (Perf. Bond No. 2094504), ECF No. 1-2); (Compl. Ex. 3 (Perf. Bond No. 2133291), ECF No. 1-3); (Compl. Ex. 4 (Perf. Bond No. 2138519), ECF No. 1-4); (Compl. Ex. 5 (Perf. Bond No. 2133266), ECF No. 1-5.)

> [NAS] shall have the exclusive right to decide and determine whether any claim, liability, suit or judgment made or brought against [NAS] or the Indemnitors, or any one of them, on any such bond shall or shall not be paid, compromised, resisted, defended, tried or appealed, and [NAS's] decision thereon, if made in good faith, shall be final and binding upon the Indemnitors. [NAS] shall have no obligation to tender its defense to any Indemnitor. If [NAS] elects not to tender its defense to any Indemnitor, the Indemnitors shall nevertheless remain liable to [NAS] for any and all loss, costs, damages, interest, and expenses, including but not limited to attorneys' fees and consultants' fees resulting from [NAS's] investigation and/or defense. An itemized statement of payments made by [NAS] for any of the purposes specified herein, sworn to by an officer of [NAS], or the voucher or vouchers for such payments, shall be prima facie evidence of the liability of the Indemnitors to reimburse [NAS] for such payments, with interest.

(Id. Ex. B (GIA ¶ 8), ECF No. 30-2.)

On July 15, 2011, Able sent NAS a letter acknowledging default and its inability to perform the construction contracts for which NAS had issued the payment and performance bonds. (Compl. ¶ 17, ECF No.1 & Ex. 6 (July 15, 2011 Letter), ECF No. 1-6); (Pl. Mot. Summ. J. Ex. A (Defs. Resp. Pl. Req. Admiss. ¶ 9), ECF No. 30-1.) Following receipt of the July 15, 2011 letter, NAS assisted Defendants with the completion of the projects upon which it had issued the payment and performance bonds, including making payments for the benefit of the Defendants. (Compl. ¶ 19, ECF No. 1); (Pl. Mot. Summ. J. Ex. A (Defs. Resp. Pl. Req. Admiss. ¶ 11), ECF No. 30-1.)

The only dispute in this matter concerns the amounts incurred by NAS in making payments on behalf of Able and in incurring attorneys' fees and consultants' fees. NAS claims the total amount expended is $779,221.31 as of June 11, 2013. (Pl. Mot. Summ. J. 7, ECF No. 30.) However, Defendants "dispute . . . the actual amount paid to subcontractors and suppliers on the project[s] by NAS" as well as "the necessity of some of the attorneys' fees and consulting

fees allegedly incurred by NAS." (Pl. Mot. Summ. J. Ex. A (Defs. Resp. Pl. Req. Admiss. ¶¶ 13-14), ECF No. 30-1.)

NAS commenced this action by filing a complaint in this court on December 18, 2012, seeking specific performance of the indemnity agreement, alleging breach of the indemnity agreement, seeking a permanent injunction for deposit of collateral security, and requesting relief under the equitable doctrines of quia timet and exoneration. (Compl., generally, ECF No. 1.) Defendants filed their answer on February 7, 2013. NAS filed a motion for summary judgment on July 9, 2013. Following a stay to allow NAS to associate local counsel, Defendants' response was due on August 30, 2013. However, Defendants have yet to file a response with the court. This matter is now ripe for review.

## II. DISCUSSION OF THE LAW

### A. Summary Judgment Standard

For the court to grant summary judgment, "the movant [must] show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in its favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

A litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." Monahan v. County of Chesterfield, 95 F.3d 1263, 1265 (4th Cir. 1996).

### B. Specific Performance

NAS argues that it is entitled to specific performance based on the undisputed facts and admissions by Defendants.[3] In South Carolina, "[s]pecific performance should be granted only if there is no adequate remedy at law and specific enforcement of the contract is equitable between the parties." Campbell v. Carr, 603 S.E.2d 625, 627 (S.C. Ct. App. 2004) (citation and internal quotation marks omitted). Moreover, "[t]he discretion to grant or refuse specific performance is a judicial discretion to be exercised in accordance with special rules of equity and with regard to the facts and circumstances of each case." Id. (citation and internal quotation marks omitted). In the present case, the court finds that there is an adequate remedy at law for expenses already incurred. See Section C, infra. Moreover, NAS makes no argument that it anticipates any additional expenditures on the performance bonds. As a result, NAS has not shown that there is no adequate remedy at law. Therefore, NAS is not entitled to summary judgment on its cause of action for specific performance.

### C. Breach of Indemnification Agreement

NAS argues that it is entitled to summary judgment on its claim for breach of Defendants' indemnification agreement based on the undisputed facts and admissions by Defendants. "Under South Carolina law, an indemnity contract is construed in accordance with

---

[3] NAS moves for summary judgment generally on all of its causes of action and does not address its causes of action individually. See (Pl. Mot. Summ. J., generally, ECF No. 30).

5

the rules of contract construction in general." Western Sur. Co. v. Cooper River Const. Co., C.A. No. 2:12-cv-2561-PMD, 2013 WL 3320661, at *2 (D.S.C. July 1, 2013) (unpublished) (citing Campbell v. Beacon Mfg. Co., 438 S.E.2d 271, 272 (S.C. Ct. App. 1993)). "'Where the contract's language is clear and unambiguous, the language alone determines the contract's force and effect.'" Id. (quoting McGill v. Moore, 672 S.E.2d 571, 574 (S.C. 2009)). Additionally, "[w]here there is an express indemnification contract, 'a surety is entitled to stand upon the letter of his contract.'" Id. (quoting Fidelity & Deposit Co. of Md. v. Bristol Steel & Ironworks, Inc., 722 F.2d 1160, 1163 (4th Cir. 1983)). Moreover, "[p]rovisions of an indemnity contract allowing a surety the unilateral right to pay claims have been uniformly sustained and upheld, except where the payments were made through fraud or lack of good faith." Id. (citing Fidelity & Deposit Co., 722 F.2d at 1163). A principal can challenge payments made by a surety seeking indemnification on grounds that such payments were made in bad faith. See Masterclean, Inc. v. Star Ins. Co., 556 S.E.2d 371, 376-77 (S.C. 2001). Further, in South Carolina, attorney's fees may be awarded only pursuant to a statute or contract. Western Sur. Co., 2013 WL 3320661 at *4 (citing S.C. Dep't of Soc. Servs. v. Tharp, 439 S.E.2d 854, 856 (S.C. 1994)).

  In the present case, Defendants do not contest the underlying facts. Defendants have admitted to executing and breaching the indemnity agreement; Defendants have also admitted that NAS incurred costs on the performance bonds as a result of their breach. (Pl. Mot. Summ. J. Ex. A (Def. Resp. Pl. Req. Admiss. ¶¶ 10, 13, 19), ECF No. 30-1.) The indemnity agreement provides that "[a]n itemized statement of payments made by [NAS] for any of the purposes specified herein, sworn to by an officer of [NAS] . . . shall be prima facie evidence of the

liability of the Indemnitors to reimburse [NAS] for such payments, with interest." (Id. Ex. B (GIA ¶ 8), ECF No. 30-2.) The indemnity agreement further provides that Defendants are responsible for any attorneys' fees and consultants' fees incurred by NAS. (Id. Ex. B (GIA ¶ 8), ECF No. 30-2.) Marcelo Virgili, Assistant Vice President of NAS, has shown via sworn affidavit that the total amount of expenses paid and costs incurred by NAS is $779,221.31. (Id. Ex. C (Marcelo Virgili Aff. ¶ 4), ECF No. 30-3.) In response to Plaintiff's Requests for Admissions, Defendants contested only the amount paid to the subcontractors and suppliers as well as the necessity of the attorneys' fees. (Id. Ex. A (Def. Resp. Pl. Req. Admiss. ¶¶ 13-14, 18-20), ECF No. 30-1.) However, Defendants did not respond to NAS's motion for summary judgment and have failed to present any evidence contradicting NAS's payments or showing that NAS incurred any expenses in bad faith. As a result, NAS is entitled to summary judgment on its claim for breach of the indemnification agreement.

### D. Injunction and Collateral Security Deposit

NAS argues that it is entitled to a permanent injunction requiring that a collateral security deposit be made by Defendants with NAS based on the undisputed facts and Defendants' admissions. Under South Carolina law, "[a]n injunction is a drastic equitable remedy courts may use in their discretion in order to prevent irreparable harm to a party." Hampton v. Haley, 743 S.E.2d 258, 265 (S.C. 2013) (citation omitted). "Due to its drastic and extraordinary nature, courts should issue injunctions with caution and only where no adequate remedy exists at law." Id. (citation omitted). In the present case, NAS has not put forth any evidence showing irreparable harm. Moreover, NAS has not shown an absence of an adequate remedy at law. Rather, NAS simply requests the same monetary amount be deposited as

collateral security that it seeks in damages for its claim of breach of the indemnification agreement. See (Compl., generally, ECF No. 1); (Pl. Mot. Summ. J., generally, ECF No. 30). As a result, NAS is not entitled to summary judgment on its cause of action for a permanent injunction.

### E. Quia Timet and Exoneration

NAS argues that the undisputed facts and Defendants' admissions warrant application of the equitable doctrines of quia timet and exoneration. In South Carolina, the doctrine of quia timet allows a surety to require a principal to pay a debt for which the surety is responsible before the surety is required to pay the debt. See Norton v. Reid, 11 S.C. 593, 597-98 (Ct. App. 1867). Exoneration is "[t]he equitable right of a surety . . . to proceed to compel the principal debtor to satisfy the obligation, as when, even though the surety would have a right of reimbursement, it would be inequitable for the surety to be compelled to perform if the principal debtor can satisfy the obligation." Black's Law Dictionary (9th ed. 2009). However, quia timet and exoneration are equitable remedies, and like all equitable remedies, they are within the sound discretion of the court. See, e.g., Dorrell v. Florence Dist. No. One of Florence Cnty., 341 S.E.2d 797, 799 (S.C. Ct. App. 1986) (citing Wright v. Patrick, 205 S.E.2d 175 (S.C. 1974)) ("Specific performance, like other equitable remedies, is within the sound discretion of the trial court."); Buffington v. T.O.E. Enterprises, No. 2007-UP-252, 2007 WL 7112504, at *2 (S.C. Ct. App. May 24, 2007) (unpublished) ("An injunction, as all equitable remedies, is granted as a matter of sound judicial discretion. . . ."). Because the court has granted NAS relief for breach of the indemnification agreement, the court declines to award equitable relief as well. As a

8

result, NAS is not entitled to summary judgment on its cause of action for quia timet and exoneration.

It is therefore

**ORDERED** that NAS's motion for summary judgment, docket number 30, is granted in part and denied in part.

**IT IS SO ORDERED.**


s/Henry M. Herlong, Jr.
Senior United States District Judge

Greenville, South Carolina
September 27, 2013